UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
AJAX ENTERPRISES, INC., AJAX      :
HEALTH BENEFIT PLAN by JUSTIN     :
M. SCIARRA, Trustee, SCIARRA      :
ASSURANCE LTD. and JUSTIN M.      :
SCIARRA,                          :     Civil Action No.
                  Plaintiffs,     :     05-5903 (NLH)
                                  :
     v.                           :
                                  :
THE SZYMONIAK LAW FIRM, P.A.      :     **OPINION**
and LYNN E. SZYMONIAK,            :
                                  :
                  Defendants.     :
                                  :
_____

**APPEARANCES:**

Paul W. Verner, Esquire
VERNER SIMON, P.C.
530 Ridgewood Road
Maplewood, NJ 07040
*Attorney for Plaintiffs*

Adam Zoldessy, Esquire
ADAM ZOLDESSY P.C.
201 Broadway
Bayonne, NJ 07002
*Attorney for Defendants*

**HILLMAN, District Judge**

Before the Court is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and (6). Because this Court cannot exercise personal jurisdiction over defendants, defendants' motion to dismiss is granted. This case, however, is not dismissed but transferred to the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1406(a).

I.  **BACKGROUND**

Plaintiffs filed libel and emotional distress claims against defendants alleging that they published defamatory statements about them on defendants' website.  Defendants filed a motion to dismiss arguing that this Court lacks personal jurisdiction over them because: they are residents of Florida; the passive website containing the alleged defamatory statements was created and is maintained in Florida; and the website does not target the forum state.

By Order entered February 22, 2007, defendants' motion to dismiss was denied without prejudice.  Although it was determined that plaintiffs did not allege sufficient facts to support this Court's exercise of personal jurisdiction over defendants based solely on their operation of the website, plaintiffs did allege "with reasonable particularity" the possibility that sufficient non-Internet minimum contacts existed between defendants and New Jersey.  See Toys "R" Us, Inc. v. Step Two, S.A. 318 F.3d 446, 456 (3d Cir. 2003) (reversing lower court's denial of jurisdictional discovery to allow exploration of non-Internet contacts to provide the "something more" needed to exercise personal jurisdiction)(citations omitted).

Plaintiffs had alleged that defendants were national counsel for Liberty Mutual Insurance Company ("Liberty Mutual") and as such had a business relationship with the forum state.  These

allegations of possible non-Internet contacts with the forum state met the required threshold showing to allow plaintiffs to conduct jurisdictional discovery. Id. (concluding that "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff's right to conduct discovery should be sustained.").

The parties state that after entry of the February 22, 2007 Order, discovery was conducted concerning defendants' possible contacts with New Jersey. Following discovery, defendants filed a second motion to dismiss for lack of personal jurisdiction. That motion is now before the Court.

**II.   DISCUSSION**

    **A.   Standard for 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

After a motion to dismiss is filed pursuant to Fed.R.Civ.P. 12(b)(2), the burden shifts to the plaintiff to provide sufficient facts to establish jurisdiction. See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1121 (W.D.Pa. 1997). The plaintiff must "... sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence..." and cannot rely "on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2)

motion to dismiss for lack of in personam jurisdiction." See Weber v. Jolly Hotels, 977 F.Supp. 327, 331 (D.N.J. 1997) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir. 1984)). A Court must look beyond the pleadings in deciding a Rule 12(b)(2) motion. Id.

### B. Personal Jurisdiction

As a United States District Court sitting in Camden, New Jersey in a diversity case, we look to the law of New Jersey for the exercise of personal jurisdiction over non-resident defendants. See Overseas Food Trading, Ltd. v. Agro Aceitunera S.A., No. 06-800, 2007 WL 77337, at *4 (D.N.J. Jan. 8, 2007). "New Jersey's long arm statute allows the exercise of personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." Id. (citing Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000)). "Pursuant to the Due Process Clause of the Fourteenth Amendment, *in personam* jurisdiction may be asserted over a nonresident so long as the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Telcordia Tech Inc. v. Telkom SA Ltd, 458 F.3d 172, 177 (3d Cir. 2006) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general

jurisdiction and specific jurisdiction.  See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).  "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state."  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n. 8 (1984)).  "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state."  Id. (citing Helicopteros,466 U.S. at 414-15 & n. 9).

**1. General Jurisdiction**

"If general jurisdiction exists, the contacts between the defendant and the forum need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over the defendant to be proper."  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 369 n. 1 (3d Cir. 2002)(relying on Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 438 (3d Cir. 1987)).  "The level of contacts required for exercising general jurisdiction is significantly higher than for the other type, specific jurisdiction."  New Jersey Sports Productions, 15 F.Supp.2d at 544 (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).  Examples of contacts that could establish general jurisdiction in the forum state are the existence of: facilities, offices, employees, registered agents, real property, telephone listings or bank accounts.  See Osteotech, Inc. v. Gensci

5

Regeneration Sciences, Inc., 6 F.Supp.2d 349, 352 (D.N.J. 1998); see also Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp.2d 629 (D.N.J. 2004)(relying on Compagnie des Bauxites de Guinea v. Ins. Co. of N. America, 651 F.2d 877, 891 n. 2 (3d Cir. 1981)(Gibbons, J. dissenting).  A court can exercise general jurisdiction over a non-resident corporation without offending due process considerations when there are "continuous and systematic" contacts between the State and the foreign entity. See Helicopteros, 466 U.S. at 415 (1984).

In support of their motion to dismiss, defendant Lynn E. Szymoniak submitted an extensive affidavit concerning her and her law firm's contacts with New Jersey.  Ms. Szymoniak stated that: (1) she is solo practitioner with offices in West Palm Beach, Florida; (2) she is admitted to practice law in Pennsylvania, Oklahoma and Florida, but has been on inactive status in Pennsylvania and Oklahoma for over 20 years; (3) she has never appeared in any court in New Jersey; (4) she has not been physically present in New Jersey since 1996; and (5) she has never attempted to recruit clients from New Jersey.  Ms. Szymoniak also states that she is the sole shareholder of the The Szymoniak Firm, P.A. (the "Firm") and that the Firm has never had offices in New Jersey or recruited clients in New Jersey.

Plaintiffs argue that general jurisdiction exists because defendants acted as general counsel for Liberty Mutual and

6

because lawyers employed by the Firm obtained *pro hac vice* admissions to practice law in the state of New Jersey.

Ms. Szymoniak denies that either she or the Firm were ever national counsel for Liberty Mutual.  Rather, she states that Liberty Mutual retained her firm on 81 matters from 1995 when the Firm began until December 31, 2006.  The 81 matters involved disputed premiums for workers' compensation policies and, of that 81, 68 were in Florida and 8 were in South Carolina.  The remaining five involved multi-state litigation.  In two of the five multi-state cases, the Firm performed support work for New Jersey lead counsel.  One of the two cases was Casalino Interior v. Liberty Mutual, Case No. 2:03-cv-03108, U.S. District Court for the Dist. of New Jersey (Newark).  In Casalino, two attorneys from the Firm, Mark Cullen and Beth Blechman, were admitted *pro hac vice* on November 7, 2003.  Ms. Szymoniak states that the Firm attorneys appeared twice in New Jersey in connection with Casalino, once for a status conference and once for a motion argument.  In the other case, Atlantic Employers Ins. Co. v. WMP-NJ, Inc., Ms. Szymoniak states that she assisted lead New Jersey counsel because she had previous experience in an unrelated case and was familiar with the records and operations of WMP.  Liberty Mutual was dismissed as a third party defendant from that case and Ms. Szymoniak states that she never appeared in New Jersey in connection with Atlantic Employers.

7

Ms. Szymoniak describes her role as assisting lead counsel for Liberty Mutual in the 81 cases due to her expertise in workers' compensation premium calculation and coverage issues. She states that she only applied to appear *pro hac vice* on behalf of Liberty Mutual in one case, <u>Liberty Mutual Ins. Co. v. Employee Resource Mgmt., Inc.</u>, 176 F. Supp.2d 510 (D.S.C. 2001), which was a case litigated in the U.S. District Court for the District of South Carolina. Although the Court in that case referred to Ms. Szymoniak as "national counsel" she states that was not and never has been national counsel for Liberty Mutual. Rather, she directed the prelitigation investigation and pre-trial discovery document reviews; Mr. Morrison of another law firm, handled all aspects of trial and made court appearances.

Ms. Szymoniak's affidavit establishes that she has never appeared as counsel for Liberty Mutual, or for any other client in New Jersey. She has never received *pro hac vice* admission to practice in New Jersey. Neither she, nor her firm, act as national counsel but rather, provided legal consultative services to Liberty Mutual, the vast majority of which is in Florida and South Carolina. She does not recruit business here or represent any clients in New Jersey. As such, the requisite "continuous and systematic" contacts between Ms. Szymoniak and New Jersey do not exist, and this Court cannot exercise general jurisdiction

over Ms. Szymoniak.  See Helicopteros, 466 U.S. at 415.[1]

The lack of contacts between Ms. Szymoniak and New Jersey appear to be recognized by defendants since they seem to base their argument for general jurisdiction on the *pro hac vice* admission to a New Jersey court of two of the Firm's attorneys. Defendants argue that the Firm purposefully availed itself of the privilege of conducting activities in New Jersey by "acquiring a license to practice law in this state."  However, neither of the two attorneys actually acquired a license to practice law in New Jersey, and defendant does not provide any authority for that assertion even if they did.

Rather, the two attorneys, Mr. Cullen and Ms. Blechman, applied for *pro hac vice* admission to a New Jersey court in connection with an unrelated case.  "*[P]ro hac vice* admission is insufficient to establish general jurisdiction because an attorney's *pro hac vice* appearance in an unrelated matter in the forum fails to establish general personal jurisdiction."  See Wolk v. Teledyne Industries, Inc., 475 F.Supp.2d 491, 502 (E.D.Pa. 2007) (finding that trips to Pennsylvania and *pro hac vice* admission in unrelated case did not establish general jurisdiction) (citing Remick v. Manfredy, 52 F.Supp.2d 452,

---

[1] Even if Ms. Syzmoniak could be fairly characterized as "national counsel" the use of that phrase cannot standing alone confer general jurisdiction.  The issue in every case, what one's title might be, is whether the contacts in this jurisdiction are "continuous and systematic."

457-58 n. 1 (E.D.Pa. 1999), <u>aff'd in part and rev'd in part on other issues</u>, 238 F.3d 248 (3d Cir. 2001) (for the proposition that a "single unrelated pro hac vice admission, not continuous or substantial, did not support personal jurisdiction"); <u>Sea Marsh Group, Inc. v. SC Ventures, Inc.</u>, 111 F.3d 129 (4th Cir. 1997) (quoting "[a]n attorney's entry of a court appearance *pro hac vice* in the forum state, without more, is not substantial enough contact to permit this court to exercise jurisdiction over his person.").

After conducting discovery, plaintiffs offer no evidence of any contacts by the defendants with the forum state, other than two of the Firm's attorneys' *pro hac vice* admissions in a unrelated case, which by itself does not confer personal jurisdiction.  See <u>Weber</u>, 977 F.Supp. at 331 (finding that after a 12(b)(2) motion is made, "plaintiff must respond with actual proofs, not mere allegations.").  Thus, we find that the requisite "continuous and systematic" contacts between the defendants and New Jersey are lacking so that exercising general jurisdiction over defendants would offend due process considerations.  See <u>Helicopteros</u>, 466 U.S. at 415.

**2. Specific Jurisdiction**

By Order entered February 22, 2007, this Court held that it did not have personal jurisdiction over defendants based on the operation of an informational, passive website.  See <u>D.T.B. v.</u>

10

<u>Advisory Committee on Judicial Conduct to the Supreme Court of the State of New Jersey</u>, 114 Fed.Appx. 447, 448 (3d Cir. 2004) (affirming District Court finding that defendants' maintenance of website accessible in New Jersey was insufficient to establish the requisite minimum contacts with the jurisdiction). The website was created by defendants who are residents of Florida and is maintained in Florida. The website is for informational purposes only and does not target New Jersey. It is accessible world-wide and is not interactive.[2]

---

[2] In <u>Remick v. Manfredy</u>, 238 F.3d 248, 259 (3d Cir. 2001), the Third Circuit referred to the lower court's summary of how to analyze a defendant's contacts based on a website, as follows:

> In analyzing a defendant's contacts through the use of the Internet, the probability that personal jurisdiction may be constitutionally exercised is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." <u>Zippo Manufacturing Co. v. Zippo Dot Com., Inc.</u>, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). Three types of contacts have been identified in order to determine the existence of personal jurisdiction. <u>Weber v. Jolly Hotels</u>, 977 F.Supp. 327, 333 (D.N.J. 1997). The first type of contact is when the defendant clearly does business over the Internet. <u>Id.</u> "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." <u>Zippo</u>, 952 F.Supp. at 1124 (citing <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257 (6th Cir. 1996)). The second type of contact occurs when "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Website." <u>Zippo</u>, at 1124 (citing <u>Maritz, Inc. v. Cybergold, Inc.</u>, 947 F.Supp. 1328 (E.D.Mo. 1996)); <u>Weber</u>, 977 F.Supp. at 333. The

In addition, plaintiffs reliance in their second opposition brief on the Calder "effects test" is unavailing. In Calder v. Jones, 465 U.S. 783 (1984), actress Shirley Jones who lived in California and whose television career was centered there brought a libel suit in California for an article written in Florida by the National Enquirer ("Enquirer"), a national magazine having its largest circulation in California. Id. at 785. The Supreme Court held that California could exercise personal jurisdiction over defendants based on the circulation of the magazine because California was not an "untargeted" audience. Id. at 789. The Court found that defendants' intentional, and allegedly tortious, actions were expressly aimed at California. Id. The Supreme Court also found that defendants knew that the article would have

---

> third type of contact involves the posting of information or advertisements on an Internet Web Site which is accessible to users in foreign jurisdictions. Zippo, 952 F.Supp. at 1124; see Weber, 977 F.Supp. at 333; Bensusan Restaurant Corp. v. King, 937 F.Supp. 295 (S.D.N.Y. 1996). Personal jurisdiction is not exercised for this type of contact because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, world wide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with personal jurisdiction case law ..." Weber, 977 F.Supp. at 333 (quoting Hearst Corp. v. Goldberger, 1997 WL 97097, at *1 (S.D.N.Y. 1997)).

Remick v. Manfredy, 52 F.Supp.2d 452, 457 (E.D.Pa. 1999) reversed on other grounds Remick, 238 F.3d at 259, (quoting Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F.Supp. 636, 638-39 (E.D.Pa. 1998)).

12

a potentially devastating impact upon Ms. Jones and they knew that the brunt of the injury would be felt by her California. Id. at 789.

The Third Circuit interpreted the Calder "effects test" as a three step test requiring plaintiff to show that: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." Remick, 238 F.3d at 258; IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998)(stating that Calder's holding cannot be severed from its facts).

Here, although plaintiffs have alleged that defendants committed an intentional tort, they have not shown that New Jersey was the focal point of the harm or that defendants expressly aimed their alleged tortious conduct at New Jersey.[3]

---

[3] In their complaint, plaintiffs allege that defendants maintained a website that included a heading entitled "Articles" which contained hyperlinks, one of which was for "101 Persons Of Interest In Staffing Companies." That link listed the person's name, place of residence and a paragraph describing certain activities. The entry for Justin Sciarra is alleged to have appeared as follows:

> Justin Sciarra, Cherry Hill, New Jersey.
> Sciarra was a principal of Sciarra Insurance Agency, Inc. and a founder of America's PEO, Inc. in Cherry Hill, NJ. Sciarra's co-founders of America's PEO were

There are no facts that show that defendants' website was specifically targeted to New Jersey or that the majority of the persons who might gain information from the website are from New Jersey.

At best, defendants argue that since the effect of the harm was felt by plaintiffs in New Jersey, that that is enough to establish specific jurisdiction. This argument was considered and rejected by the Third Circuit in <u>IMO Industries</u>, 155 F.3d at

---

      Paul Hopkins, Neal Snyder and Anthony Huff. America's PEO was formerly known as American Labor, Inc. and was affiliated with Omni Financial Services, Inc., National Labor Force, Inc., National Labor Force I, Inc., American Labor Services, Inc., Western American Labor Force, Inc., MidAtlantic Equities, Inc., Delaware Valley Properties, Inc. and Granhill Asset Management, Inc. America's PEO was purchased by Certified Services, Inc. in March, 2002. Certified Services also purchased StaffAmerica in Charlotte, North Carolina, ABP, Inc. in Apopka, FL, Meridian Professional Employer Services of Bradenton, FL and The Cura Group, in Ft. Lauderdale, FL. Anthony R. Russo was the CEO of Certified Services, Inc. in 2002. Ajax Health Benefit Plan, Ajax Enterprises, Inc. and American Benefit Plan in Audobon, New Jersey, and Sciarra Assurance, Ltd. in Philadelphia, PA, sold health insurance in Texas in September, 2000, and claimed to be an approved ERISA plan. Enrollees in the health care program were required to become employees of Ajax Enterprises, Inc. The TX DOI issued a cease and desist order and fined the companies and their principal, Justin Sciarra, each $1 million.

      Although New Jersey is listed as Mr. Sciarra's residence, this does not meet the <u>Calder</u> "effects tests" because it does not specifically target New Jersey. The entry on the website lists several states where Mr. Sciarra allegedly did business and in fact appears to target a national audience. Further, the allegedly fraudulent activity by Sciarra is stated to have occurred in Texas, not New Jersey.

261. The Third Circuit looked at cases in other Circuit courts, namely, Far West Capital, Inc. v. Towne, 46 F.3d 1071 (10th Cir. 1995), Southmark Corp. v. Life Investors Inc., 851 F.2d 763 (5th Cir. 1988) and ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997), cert. denied, 523 U.S. 1048 (1998), and determined that they "... all stand for the proposition that the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." IMO Industries, 155 F.3d at 261. The combining thread in those cases was that "the plaintiffs failed to point to other actions that adequately demonstrated that the defendants targeted (or "expressly aimed" their conduct at) the forum, and thereby showed that the forum was the focal point of the tortious activity." Id. (citing General Electric Capital Corp. v. Grossman, 991 F.2d 1376, 1387-88 (8th Cir. 1993); Noonan v. Winston Co., 135 F.3d 85, 90-91 (1st Cir. 1998).

Therefore, plaintiffs do not meet the elements of the Calder effects test, and we cannot exercise specific jurisdiction over defendants based on their operation of an informational, passive website.[4]

---

[4] Because we do not exercise personal jurisdiction in this matter, we do not reach defendants' alternative argument for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

**C.   Transfer**

Plaintiffs request that if this Court decides that personal jurisdiction is lacking over defendants, that the case be transferred to the U.S. District Court for the Southern District of Florida.

Pursuant to 28 U.S.C. § 1406(a), a district court is permitted to either dismiss or transfer a case to another court even if it does not have jurisdiction.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962) (establishing that the language of § 1406 is broad enough to authorize the transfer of cases where the plaintiff has filed in a court that does not have jurisdiction over the defendant); Lafferty v. St. Riel, 495 F.3d 72, 77-78 (3d Cir. 2007)(stating that § 1406(a) comes into play when plaintiffs have filed in an improper forum and district courts are required to either dismiss or transfer the case) (citing Goldlawr, 369 U.S. at 465-66).  Section 1406(a) provides in pertinent part:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

Plaintiffs filed this case in the District of New Jersey alleging that defendants had sufficient contacts with the State of New Jersey and there is no evidence that plaintiffs brought

16

this case in this District in bad faith. See Lafferty, 495 F.3d at 78 n. 7. Also, an outright dismissal of this case at this time could result in the claim being barred by the applicable statute of limitations. See F.S.A. § 95.11(4)(g)(Florida law imposes two year statute of limitations on libel and slander claims);[5] see also Goldlawr, 369 U.S. at 467 (concluding that the filing of a case shows the proper diligence by the plaintiff to begin his case and toll the statute of limitations and that transfer may be appropriate so as not to penalize the plaintiff with "time-consuming and justice-defeating technicalities"). The defendants' law firm is located in West Palm Beach, Florida which is physically located within the jurisdiction of the U.S. District Court for the Southern District of Florida.[6]

Thus, given that we have the authority to transfer this case "in the interest of justice," we find that transfer of this case to the U.S. District Court for the Southern District of Florida is appropriate.

---

[5] There is some concern in transfer cases of a plaintiff filing in a forum to take advantage of its longer statute of limitations period. See Lafferty, 495 F.3d at 78 n. 7. Here, since New Jersey has a one year statute of limitations period for libel actions, see N.J.S.A. 2A:14-3, which is shorter than Florida's two year statute of limitations period, see F.S.A. § 95.11(4)(g), such a concern over forum shopping is not raised.

[6] See http://www.flsd.uscourts.gov/.

17

### III.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.  Pursuant to 28 U.S.C. § 1406(a), this case is transferred to the United States District Court for the Southern District of Florida.

                                     s/Noel L. Hillman  
                                     NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: April 10, 2008